CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
For H'burg
FEB 25 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| HOSTETTER, KEACH & CASSADA CONSTRUCTION, LLC, | ) ) ) Civil Action No. 5:10CV00069 |
| Plaintiff, | ) ) **MEMORANDUM OPINION** |
| v. | ) ) By: Hon. Glen E. Conrad |
| MILLER & ANDERSON, INC., | ) Chief United States District Judge ) |
| Defendant. | ) |

This action arises from a dispute between a general contractor, Hostetter, Keach & Cassada Construction, LLC ("HKC"), and an electrical subcontractor, Miller & Anderson, Inc. ("Miller & Anderson"). The case is presently before the court on Miller & Anderson's motion to dismiss and the issue of which state's substantive law applies to HKC's claims.

## Background

Plaintiff HKC is a general contractor with its principal place of business in Charlotte, North Carolina. Defendant Miller & Anderson is an electrical subcontractor with its principal place of business in Clear Brook, Virginia.

In 2009, HKC prepared a bid for the VAMC Emergency Room Accessability Project in Martinsburg, West Virginia. HKC solicited bids from various subcontractors to perform electrical work for the project. On May 19, 2009, Miller & Anderson submitted a bid for the electrical work, which included a total proposed amount of $189,592.00. HKC incorporated Miller & Anderson's bid into its overall bid for the project. As the low bidder, HKC was awarded the contract for the project on May 29, 2009.

On May 30, 2009, HKC received a bid from a different electrical subcontractor, which was significantly higher than Miller & Anderson's bid. As a result, HKC contacted Miller &

Anderson to confirm that its bid was accurate. Miller & Anderson allegedly assured HKC that the bid was accurate and that it could be relied upon by HKC.

On June 18, 2009, HKC sent Miller & Anderson a notice to proceed in which HKC stated that it would issue a purchase order in the near future. On July 8, 2009, the owner of the VAMC project authorized KHC's proposed subcontractors. HKC then issued Miller & Anderson a subcontract on July 10, 2009.

On July 21, 2009, Miller & Anderson advised HKC that Miller & Anderson would not execute the proposed subcontract or work on the project due to an error in the bid that it submitted to HKC. That same day, HKC sent Miller & Anderson a letter demanding that Miller & Anderson honor the bid. In its reply letter dated July 22, 2009, Miller & Anderson stated that it was retracting its bid and that it would not execute the proposed contact. HKC ultimately hired another subcontractor at a greater cost to complete the electrical work on the project.

On April 29, 2010, HKC filed the instant action in the Circuit Court of Berkeley County, West Virginia, asserting claims of breach of express contract; breach of implied contract; negligent misrepresentation; promissory estoppel; detrimental reliance; and constructive fraud. The defendant removed the case to the United States District Court for the Northern District of West Virginia on May 14, 2010, invoking federal diversity jurisdiction under 28 U.S.C. § 1332. On June 18, 2010, the defendant moved to transfer the case to this court. The defendant's motion was granted on July 27, 2010.

Before the case was transferred to this court, the defendant filed a motion to dismiss. The court held a hearing on the motion on February 9, 2011. As discussed during the hearing, the

court must determine, as a preliminary matter, which state's substantive law applies to the plaintiff's claims.

## Discussion

Ordinarily, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). When an action is transferred from one federal court to another, however, "the choice of law provisions of the state in which the suit originated applies." Weinberger v. MCI Telecommunications Corp., 1994 U.S. App. LEXIS 1241, at *7 (4th Cir. Jan. 25, 1994) (citing Ferens v. John Deere Co., 494 U.S. 516, 531 (1990)); see also Lafferty v. St. Riel, 495 F.3d 72, 76-77 (3d Cir. 2007) ("Faced with a choice-of-law question, federal courts in the district to which the case has been transferred under § 1404(a) must apply the law of the transferor state."). The court must therefore apply West Virginia's choice-of-law principles.

For claims that are based in contract, West Virginia courts have traditionally applied the doctrine of lex loci contractus, pursuant to which "the law of the state in which a contract is made and to be performed governs the construction of a contract." Michigan Nat'l Bank v. Mattingly, 212 S.E.2d 754, 756 (W. Va. 1975). That doctrine, however, "is applicable only where the contract in question was both made and to be performed in the same state." Nowsco Well Service, Ltd. v. Home Ins. Co., 799 F. Supp. 602, 606 (S.D. W. Va. 1991). The West Virginia Supreme Court of Appeals has held that when a case involves the interpretation of a contract that is made in one state to be performed in another, "the law of the state of formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this

3

state." Liberty Mutual v. Triangle Industries, 390 S.E.2d 562, 567 (W. Va. 1990); see also Nowsco, 799 F. Supp. 602 at 606.

The determination of where a contract was formed traditionally involves an analysis of where the offer was accepted, or where the last act that made the contract binding was performed. Three States Coal Co. v. Superior Elkhorn By-Products Coal Co., 158 S.E. 661, 663 (W. Va. 1931); see also McGough v. Nalco Co., 496 F. Supp. 2d 729, 742 (N.D. W. Va. 2007). In the case where an offer is made in one state, but accepted in another state, "the acceptance completes the contract, and the place of the contract is where the acceptance of the offer is mailed or telegraphed [or otherwise communicated]." Three States Coal Co., 158 S.E. at 663 (holding that a contract was formed in West Virginia where a telegram of acceptance was sent from West Virginia to the offering party in Kentucky).

In this case, it is undisputed that the contract negotiations between HKC and Miller & Anderson took place, not in West Virginia, but in North Carolina, where HKC is based, and Virginia, where Miller & Anderson is based. It is unclear from the instant complaint, however, whether the alleged contract was formed in Virginia or North Carolina. Although the complaint states that the alleged contract was "defined" by Miller & Anderson's proposed bid, it fails to provide any additional information as to where the last act that made the contract binding was performed. Without such information, the court is unable to ascertain which state's substantive law applies to the claims that sound in contract.[1] The court agrees with Miller & Anderson, however, that such claims will be governed by either Virginia law or North Carolina law.

---

[1] As will be discussed further below, the plaintiff will be granted the opportunity to file an amended complaint.

Although the plaintiff continues to maintain that the application of West Virginia law is appropriate, none of the contract negotiations occurred in West Virginia, and the plaintiff has failed to establish that West Virginia has a more significant relationship to the transaction and the parties than Virginia or North Carolina.

To the extent the plaintiff's claims are based in tort, the court will apply the law of North Carolina. The West Virginia Supreme Court of Appeals has held that the doctrine of <u>lex loci delicti</u> applies to claims sounding in tort. <u>Vest v. St. Albans Psychiatric Hosp.</u>, 387 S.E.2d 282, 283 (W. Va. 1989). Under this doctrine, "the substantive rights between the parties are determined by the law of the place of injury." <u>Id.</u> (citing <u>Paul v. Nat'l Life</u>, 352 S.E.2d 550 (W. Va. 1986)). The doctrine applies in fraud actions, as in most tort actions. <u>See</u> <u>Jordan v. Shaw Indus.</u>, 1997 U.S. App. LEXIS 33589, at *8 (4th Cir. Nov. 26, 1997) (recognizing that "[w]hen a person sustains loss by fraud, the place of the wrong is where the loss is sustained, not where fraudulent representations are made." <u>Id.</u>) (internal citation and quotation marks omitted). Thus, here, as in <u>Jordan</u>, the law of North Carolina, where the party allegedly defrauded is headquartered, governs any tort claims asserted by the plaintiff, since it appears that such state is where the plaintiff relied on the false representations and where its loss was sustained.

For the same reasons, the court concludes that the plaintiff's claims of promissory estoppel and detrimental reliance are governed by the law of North Carolina, since that is where the plaintiff apparently relied to its detriment on promises allegedly made by the defendant. <u>See</u> <u>Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group</u>, 299 F. Supp. 2d 505, 523 n.19 (D. Md. 2004) (holding that a claim of promissory estoppel should be governed by

5

the law of "the jurisdiction where the plaintiff allegedly relied on the promise and suffered a detriment").

As the plaintiff emphasized during the hearing on the defendant's motion to dismiss, the original complaint, which was filed in West Virginia state court, was drafted to comport with the procedural and substantive law of West Virginia. In light of the court's determination that the plaintiff's claims will be analyzed under Virginia and/or North Carolina law, the plaintiff will be permitted to file an amended complaint. Upon the filing of an amended complaint, the defendant may renew its motion to dismiss.[2]

## Conclusion

For the reasons stated, the plaintiff will be granted the opportunity to file an amended complaint and the defendant's motion to dismiss will be dismissed as moot.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 25th day of February, 2011.

　　　　　　　　　　　　　　　　　　/s/ Glen Conrad
　　　　　　　　　　　　　　　　　　Chief United States District Judge

---

[2] The court notes that it has limited its choice-of-law analysis to the claims asserted in the plaintiff's original complaint. If the plaintiff asserts any new claims in its amended complaint that are not covered by the court's analysis, the parties will be free to argue which state's substantive law should apply to such claims.